Peter Dowiat, Austin Ellsworth and James Gilmore v. The People, etc., for the use of Lucy Richardson.

92    433
98    ¹560
a193s 264
92    433
a193s 264

1. DRAM-SHOP KEEPER'S BONDS — *Construction of.* — A dram-shop keeper's bond is to be construed, as are other contracts, to discover and give effect to the intention of the parties, so that it may be enforced according to the sense in which the parties mutually understood it at the time of its execution.

2. SAME—*Where the Intention of the Parties is Apparent.*—Where the intention of the parties to the bond is sufficiently apparent, effect is to be given to it in the same sense, though violence is done to its words; greater regard is to be had for the clear intent of the parties than to any particular words which they may have used in the expression of their intent.

3. SAME—*Clerical Errors Corrected by Construction.*—Where it is apparent on the face of a dram-shop keeper's bond that a mere clerical error has been made, and it is also apparent from the face of the bond

what the contract should be to make it as intended, the court will correct the error by construction.

4. SAME—*To be Construed so as to Render it Binding.*—A dram-shop keeper's bond should be construed so as to render it binding upon all parties to it, but not so as to render it oppressive or inequitable as to either.

5. SAME—*Meaningless Words to be Rejected.*—Words used in a dram-shop keeper's bond, which are meaningless or inconsistent with the manifest intent of the parties and purpose of the instrument, are to be rejected, as surplusage, if without them, the bond can be sustained and effect given to it according to the intent of the parties executing it.

6. SAME—*Application of the Rule that a Contract of Suretyship is Strictissimi Juris.*—The rule that a contract is *strictissimi juris* relates to the application of the contract after it has been construed and not to the construction itself.

**Debt,** on a dram-shop keeper's bond. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the May term, 1900. Affirmed. Opinion filed December 7, 1900.

GEORGE T. BUCKINGHAM and O. M. JONES, attorneys for appellants.

PENWELL & LINDLEY, attorneys for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of debt by appellee for the use of Lucy Richardson, upon the dram-shop bond given by appellants when a license was issued by the village of Himrod, in Vermilion county, Illinois, to appellant Peter Dowiat, to keep a dram-shop in that village for three months next ensuing from October 31, 1899.

The case was tried by jury in the Circuit Court of Vermilion County, and resulted in a verdict and judgment in favor of appellee for $3,000 debt and $2,500 damages. Appellants bring the case to this court by appeal, and urge a reversal of that judgment on the grounds that the court admitted improper evidence, gave improper and refused proper instructions, and that the verdict is against the evidence.

The declaration contained two counts. The first, in sub-

stance, charged that Peter Dowiat on, to wit, November 1, 1899, applied to the said village of Himrod for a license for him to keep a dram-shop to retail intoxicating liquors therein, which license was then granted to him by that village for the period of, to wit, three months from November 1, 1899; and that in compliance with the provisions of the statute in such case made and provided, appellants then and there executed their bond, whereby they bound themselves unto appellee in the penal sum of $3,000, conditioned that if said Peter Dowiat should pay to all persons all damages that they may sustain either in person or property or means of support by reason of his so obtaining said license, selling or giving away intoxicating liquors, then said obligation to be void, otherwise to remain in full force and effect; that after the making of said bond, and while it was in force, to wit, on December 28, 1899, Horace Richardson was a farmer and teamster residing with his wife, Lucy Richardson, a few miles from said village, and was a healthy and industrious man, aged about thirty years, who, by his labor, supported his said wife in comfort, and in addition thereto, was able and willing to accumulate property sufficient to support himself and wife in comfort in their old age; and that on, to wit, the day and year last aforesaid, said Horace Richardson drove his team of horses hitched to his wagon, to said village, and himself went into the dram-shop of said Peter Dowiat there situated, and said Dowiat sold and gave to said Horace intoxicating liquors, which Horace drank and from which he became intoxicated, and while so intoxicated, attempted to drive his said horses attached to his wagon in which he was riding, back to his home on said day last aforesaid; but said Horace, because of such intoxication, became so stupid and helpless that he was unable to control and drive his team, and the same became unmanageable and ran away, causing him to be thrown from his wagon and cast violently upon the ground, where he remained helpless and insensible until discovered in the morning of the next day; and that said injuries and exposure were so severe that said Horace never recovered

therefrom, but languished and died. By means whereof
said Lucy Richardson has been damaged and deprived of
her means of support to the extent of $3,000, which the
appellants became liable to pay, but neither they nor either
of them have done so, whereby an action has accrued to
appellee to demand of appellants for the use of said Lucy
Richardson, said sum, $3,000, for which sum and said dam-
ages appellee, for the use aforesaid, brings suit.

The second count is like the first, except that the condi-
tion of the bond is averred to be as follows:

" That if the above bounden Peter Dowiat should pay to
all persons all damages that they may sustain, either in
person or property or means of support, by reason of the
said Peter Dowiat obtaining said license for selling or giv-
ing away intoxicating liquors, then the said obligation was
to be void, otherwise to remain in full force and effect."

Appellants interposed the following pleas to the declara-
tion: A plea of *non est factum* (not verified); a plea to the
first count denying the facts averred therein as a breach of
the bond; and a plea to the second count denying the facts
averred therein as a breach of the bond.

On the trial, appellee offered in evidence the following
bond:

" Know all men by these presents that we, Peter Dowiat,
James Gilmore and Austin Ellsworth are held and firmly
bound unto the People of the State of Illinois, in the penal
sum of three thousand dollars, for the payment of which,
well and truly to be made, we bind ourselves, our heirs,
executors and administrators, jointly, severally and firmly
by these presents.

Signed by us, and sealed with our seals, this 27th day of
October, A. D. 1899.

Whereas, by the provisions of the ordinances of the vil-
lage of Himrod, Illinois, regulating the sale of intoxicating
malt, vinous, mixed or fermented liquors, and by virtue of
the statute in such cases made and provided, the said vil-
lage of Himrod is about to grant a license to the above
bounden Peter Dowiat to keep a dram-shop in the said
village of Himrod to retail intoxicating, malt, vinous, mixed
or fermented liquors, in quantity less than one gallon.

Now, therefore, the above obligation is such, that if the

above bounden Peter Dowiat shall pay to all persons all damages that they may sustain, either in person or property or means of support, by reason of the above bounden Peter Dowiat obtaining a license, as aforesaid, for selling or giving away intoxicating liquors, then this obligation to be void; otherwise to remain in full force and effect.

| (Fifty-cent U. S. | PETER DOWIAT, | [SEAL.] |
| Internal Revenue | JAMES GILMORE, | [SEAL.] |
| Stamp.) | AUSTIN ELLSWORTH. | [SEAL.] " |

On the back of which is the following:

" No. 2.   Bond of the State of Illinois.   Peter Dowiat. Bond approved and license issued October 31, 1899.

J. D. BAIRD, Village Clerk."

Appellants objected to the introduction of the bond, not because it was not executed by appellants, but because they claimed it varied from the bond described in the first count of the declaration, and because, by the second count, no breach of said bond is assigned, because it is not conditioned according to the statute, and because it creates no liability against appellants.   But the court overruled the objections and admitted the bond in evidence, and appellants preserved an exception.

And appellants admitted that, at the time of the occurrence of the alleged facts stated in the declaration, Peter Dowiat was keeping a dram-shop under a license issued to him by the said village of Himrod; that said bond was given in connection with issuing that license, and was left with the proper custodian of the records of said village; and that said license ran for a period of three months, which had not expired when the alleged sales of intoxicating liquor were made to the husband of said Lucy Richardson.

The evidence shows that Horace Richardson was a prosperous farmer, living with and supporting his wife, Lucy Richardson, on a farm about eight miles south of Himrod, in Vermilion county.   On the morning of December 28, 1899, he took a wagon load of timbers to the coal mine at Himrod, and after unloading them at the mine, fed his team and went to the saloon of Peter Dowiat, where he remained

from about 1:30 to 5:30 P. M., during which time he pur-
chased and drank there considerable beer and whiskey,
becoming quite drunk from the effects thereof. About
half-past five o'clock he left the saloon with a bottle of
whiskey which he purchased there, and started to drive his
team toward his home. The next morning his dead body
was found on the road, between his house and Himrod, and
it bore evidence of having been dragged some distance.
The wagon had been run against a stump on the side of the
road, where the two hind wheels and lumber bed of same
were left, and the front wheels, with the horses attached
thereto, were found in the stable lot of the father-in-law of
Richardson, who lived on that road.

Because in the condition of the bond admitted in evidence
appear these words, "obtaining a license as aforesaid for,"
which are more than those called for by the terms of the
statute under which the bond was given, it is insisted by
counsel for appellants that its validity as a statutory bond
is destroyed, and that giving effect to those words in the
bond, then appellants are not liable to appellee on the facts
averred and proven, because no damages have or can accrue
to appellee by reason of said Dowiat obtaining a license as
aforesaid for selling or giving away intoxicating liquor.

We can not concur in this view, for this bond is to be con-
strued like any other contract " to discover and give effect
to the intention of the parties, so that performance of the
contract may be enforced according to the sense in which
they mutually understood it at the time it was made; and
where the intention of the parties to the contract is suf-
ficiently apparent, effect must be given to it in that sense,
though violence be done thereby to its words; for greater
regard is to be had to the clear intent of the parties, than
to any particular words which they may have used in the
expression of their intent." 1 Chitty on Conts. (4th Am.
Ed.), 104–5; and Walker v. Douglas, 70 Ill. 445.

And "where it is apparent upon the face of a written in-
strument that a mere clerical error has been made, and it is
also apparent from the face of the instrument what the con-

tract should be, to make it as intended, the court will correct such error by construction." Beach on Contracts, Vol. 1, Sec. 707.

"A reasonable construction should be given every contract, for it should not be presumed that the parties intended anything either senseless or absurd. A rigid adherence to the letter often leads to erroneous results, and misinterprets the meaning of the parties. Inconsistent clauses must be construed according to the subject-matter and the motive; and the intention of the parties, as gathered from the whole instrument, must prevail over the strictness of the letter. The fact that the construction contended for would make the contract unreasonable, and place one of the parties at the mercy of the other, may be taken into consideration. A clause or a word may be rejected which is irreconcilable with the nature of the contract or the general design of the parties; or to which no meaning can be assigned in view of the connection in which it is used, and of the whole instrument." Ibid. Sec. 708.

"The general rule is that a contract should, if possible, be so construed as to render it binding on both parties and not so as to render it oppressive or inequitable as to either." Ibid. Sec. 709.

And "words which in view of the purpose of the transaction are meaningless or inconsistent with the manifest intent may be rejected as surplusage, if without them the contract may be sustained, and be given effect according to the intent." Ibid. Sec. 718; Holmes v. Parker, 25 Ill. App. 225; and same case in 125 Ill. 478.

It therefore seems clear to us that appellants, in executing this bond, intended to comply with the provisions of the statute under which it was given and that the words "obtaining a license as aforesaid for" were inserted in the condition thereof by mistake, and should be treated as surplusage, and the bond considered as though they were not in it.

As was said by Chief Justice Marshall in Cooke v. Graham's Admrs., 3 Cranch (U. S.), 229 (1st Ed., Vol. 8, p. 228), "There are many cases on the construction of bonds, where the letter of the condition has been departed from to carry into effect the intention of the parties."

Thus treated and considered, it is, in effect, a good statutory bond, and as such, is properly declared upon and was properly admitted in evidence under the pleadings.

Counsel for appellants also contend that the Circuit Court improperly held the sureties on this bond liable thereon for damages which were occasioned to the usee in this case by reason of the principal therein having sold or given away intoxicating liquors to her husband, while by the express terms of the bond, they only obligated themselves to pay for such damages as might be sustained by reason of the principal obtaining a license for selling or giving away such liquors.

While the law undoubtedly is that a contract of suretyship is *strictissimi juris*, yet this rule relates to the application of the contract after it had been construed and not to the construction itself. The contract should be construed by the same rule that all other contracts are. Brandt on Suretyship and Guaranty, 2d Ed., Vol 1, Sec. 92; and Stevens et al. v. Partridge, 88 Ill. App. 665.

We have examined the instructions which were given and those that were refused in the light of the criticisms made by counsel for appellant to the rulings of the court thereon, and find that when those which were given are read as one charge, they contain a fair and reasonably accurate exposition of the law applicable to the evidence and issues tried; and that all which was proper in those refused, was contained in those given.

And we have carefully considered all the evidence contained in the bill of exceptions in this record and find it warrants the verdict rendered, the facts in this case being very similar to those in the case of Smith v. The People, 141 Ill. 447, where a recovery upon a similar bond was sustained. Finding no reversible error was committed by the Circuit Court in the proceeding in this case and that the result reached is a fair and proper one under the pleadings and the evidence, the judgment of that court will be affirmed.