ERNEST PEEL, Plaintiff-Appellee, *v.* DUANE ROLANDO *et al.,* Defendants-Appellants.

(No. 71-206;

Second District—May 31, 1972.

Gerald J. Shine, of Chicago, for appellants.

Richard W. Husted, of Elgin, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

This is an appeal from a trial by the court and a judgment for $2422.98 entered against the defendants for the care and training of certain horses.

The plaintiff, Ernest Peel, is a professional horse trainer who cared for, or trained at various times, seven of the defendants' horses.

The main controversy centers about the agreement entered into between the plaintiff and the defendants relative to the care and/or training of these horses. The plaintiff testified and the trial court held that the agreement between the plaintiff and the defendants relative to three of the hackney ponies, Curtain Call, High Stepper, and Mark Magnifique, was that the plaintiff defer any billing on these horses until they were sold at which time the profit, if any, would be divided between the plaintiff and the defendants. This procedure differed from that which the plaintiff followed with regard to the other four horses. For the four horses, monthly billing was sent to the defendants.

Defendants testified as they understood the agreement, there would be no charge to them for the board and training of the hackneys, prior to sale. Both plaintiff and defendants testified that the same agreement, whatever it was, as existed with regard to the two hackneys also extended to Mark Magnifique when he was purchased. According to the plaintiff this meant that the billing on the hackneys would be deferred until Mark was sold.

Plaintiff had certain uniform fees which he charged the defendants, for board only the charge was $35 a month; for board plus training the charge was $125 a month. There was conflicting testimony as to exactly how many months plaintiff trained each horse.

The trial court found that the plaintiff was entitled to fees for training two hackney ponies four months each at $125 per month, for a total of $1000, and for maintenance and care of the two ponies for eight months, the sum of $560. The court further found that the plaintiff was entitled to recover $625 for the training of the cob tailed pony for five months and $140 for four months of boarding. The trial court further found that the plaintiff was entitled to recover for shoeing, transportation, drayage and entry fees, a net sum of $246.14. Lastly, the trial court found that the plaintiff was entitled to recover for April, May and June training and expenses, the total sum of $851.84. After deducting an admitted advance to the plaintiff by the defendants of $1000, this resulted in a total judgment of $2422.98.

On the weekend of June 26th, 1970 the plaintiff was showing three of the horses, Doodle-Lee-Do, Temptress, and Mark, at the Kankakee horse show. A dispute arose between the plaintiff and the defendants concerning the care the plaintiff was giving the horses. After an altercation in which the police were called, the plaintiff stated he would not turn over

the horses until his bill was paid. Plaintiff's wife rather hastily computed the bill to be $3456 and upon receipt of Duane Rolando's check in that amount the horses were turned over to the defendants. The defendants stopped payment on the check. Subsequently, a bill was sent to them, and when the bill was not paid, the plaintiff filed suit claiming a total of $3456 and $5000 for punitive damages. As indicated above, this resulted in the court's finding of a total bill of $3422.98 less the $1000 loan to the plaintiff or a judgment in the indicated amount of $2422.98. The court found plaintiff was not entitled to punitive damages.

■■ The sole issue before this court is the interpretation of the oral agreements entered into between the plaintiff and the defendants. The defendants contend that the agreement as testified to by the plaintiff was unfair and unconscionable because they had no chance to profit therefrom. On the other hand, it appears that the contract as contended for by the defendants would be unconscionable as far as the horse trainer is concerned, that is, that the trainer would train the horses, bear the expense thereof, and only gain if the horses were sold at a profit. This court has repeatedly said that it will not substitute its judgment for that of the trial court on factual issues which are determined by that court in the absence of obvious error or injustice. We find nothing in the record which would indicate that the agreement as testified to by the plaintiff was improbable or unbelievable. The defendant does not contend that plaintiff's failure to bill them monthly misled them or constituted laches.

■■ Defendant next contends that under the agreement testified to by the plaintiff, any billing would be deferred until Mark was sold, so that the trial court's finding in favor of the plaintiff was such as to "remake the agreement." However, the record does not disclose any interest on the part of the defendants in continuing their agreement insofar as the contemplated joint sale of Mark. In particular, there is nothing in the record which shows any attempt on the part of the defendants to sell the horse Mark. If there were such a contract it is obvious that the defendants abandoned the same. A party who is furnishing labor or goods may bring action in the nature of *quantum meruit*, the price to be governed by the stipulation in the original agreement. (*Marshall Field & Company v. Noelle Company*, (1967), 81 Ill.App.2d 409, 226 N.E.2d 454, 457.) The award in favor of the plaintiff herein was proper, for any other result would make plaintiff's recovery of his outlays on the horses dependent on the whim or caprice of the defendants, who are now hostile to him, and they may never sell Mark, for all that appears in the record.

■■ Defendants contend under the agreement they were dependent upon the judgment of the plaintiff as to when Mark should be sold.

However, the uncontroverted testimony was that the defendants could take their horses back at any time which would protect their financial interest. Plaintiff would have no such protection with regard to his expenses and costs of training the horses. Contracts are to be construed to avoid such an oppressive result. (*Dowiat v. People to the Use of Richardson* (1901), 92 Ill.App. 433, 61 N.E. 1059, 193 Ill. 264.) The court there stated on page 1061:

"* * * Contracts should be so construed as to give effect to the intention of the parties, and not to defeat it, and, where that intention is sufficiently apparent, 'effect must be given to it in that sense, though violence be done thereby to its words, for greater regard is to be had to the clear intent of the parties than to any particular words which may have been used in the expression of the intent.' [Citations.]"

The plaintiff has moved to strike the report of proceedings from the record on the ground that same was not certified. In view of our opinion herein that motion is denied.

As stated above this court will not substitute its judgment for that of the trial court herein and the judgment of the trial court is hereby affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and ABRAHAMSON, J., concur.