SAM GADSBY *et al.*, Plaintiffs-Appellants, v. HEALTH INSURANCE ADMINISTRATION, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—87—0494

Opinion filed April 22, 1988.

Louis R. Hegeman, of Gould & Ratner, of Chicago (Robert A. Carson, of counsel), for appellants.

Edith F. Canter, of Gottlieb & Schwartz, and David A. Belofsky, of John O. Demaret & Associates, both of Chicago (Barry J. Freeman, of counsel), for appellees.

JUSTICE NASH delivered the opinion of the court:

Plaintiffs, Sam Gadsby (Gadsby) and Material Service Corporation (MSC), filed a complaint against defendants, Health Insurance Administration, Inc. (HIA), and ATI Carriage House, Inc. (ATI), in which they alleged violations of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 613 *et seq.*), breach of contract, breach of contract implied in fact, and fraud. The trial court granted defendants' motion for summary judgment on plaintiffs' contract claim, finding no breach of contract, and granted defendants' motions to strike and dismiss, filed pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), as to the remaining claims for failure to state a cause of action. Plaintiff appeals.

Gadsby and ATI entered into an agreement for the purchase of Gadsby's retail furniture store. In conjunction with the transaction, they entered into a written employment contract which provided that ATI would employ Gadsby for a five-year period commencing September 1, 1979, and that, during the pendency of Gadsby's employment, he would be entitled to the same fringe benefits ATI furnishes to its retail store managers, including participation in ATI's medical and hospitalization insurance plan. Upon the earlier of Gadsby's fifth anniversary, death, voluntary retirement, or termination, ATI was no longer obligated to provide Gadsby with benefits except as follows:

"If Employee voluntarily retires pursuant to paragraph 9 hereof, Company will, if permitted so to do by its group insurance carriers, continue at its expense to include Employee under its group life insurance and medical and hospitalization insurance plans until the fifth anniversary hereof."

When the employment agreement was entered into, ATI provided health insurance to its employees but not to its retired employees.

Gadsby retired on or about December 15, 1981, at which time ATI provided health insurance to its employees through a partially self-insured medical plan which did not cover retired employees. On February 1, 1982, ATI changed to a self-funded plan with stop-loss insurance, naming HIA as the claims administrator. Again, the plan did not provide for retiree health insurance. When ATI instituted each of its plans, summary plan descriptions specifying benefits and eligibility were distributed to its employees. The plan document, which the then retired Gadsby received in February 1982, advised that the plan covered eligible employees, who were defined as "permanent full-time employees *** who were working a minimum of 30 hours per week." A covered person was defined as "any full-time Employee or his Dependent while such Employee or Dependent is covered hereunder." The plan document also indicated that only employees actively at work were covered. Gadsby also received an identification card from HIA which provided that "[t]he employee *** and any eligible dependents has qualified for benefits under a program provided by the above named employer. Continuance of coverage is subject to the terms of the plan document. Please communicate with the employer to confirm eligibility." Subsequent to Gadsby's retirement, ATI, through its payroll service, continued to deduct, through approximately December 1982, contributions for dependent coverage from his retirement salary. Between February 1, 1982, and April 17, 1982, Gadsby submitted medical claims for himself and his dependents to ATI which were submitted by ATI to HIA for approval, and were

processed, and either paid or applied against the appropriate deductible pursuant to ATI's medical plan.

On April 17, 1982, Gadsby suffered a stroke. Mrs. Gadsby contacted HIA and received a verbal acknowledgement that Gadsby was eligible for benefits under ATI's medical plan. At no time prior to Gadsby's stroke did Gadsby, or anyone on his behalf, inquire whether he was eligible for medical benefits. Claims relating to Gadsby's stroke were submitted to ATI, and pursuant to a claims administration agreement between ATI and HIA, ATI submitted these claims to HIA for a determination of eligibility and benefits. HIA denied Gadsby's claims because the ATI plan did not cover employees not working at least 30 hours per week, and it had no provision for retiree benefits. At the time of Gadsby's stroke, Mrs. Gadsby was employed by plaintiff, MSC, and Gadsby's claims were submitted to MSC and paid in accordance with its medical plan. MSC and Gadsby entered into a subrogation agreement whereby MSC was subrogated to all of Gadsby's rights and claims against ATI.

Plaintiffs first brought an action against defendants in the United States District Court for the Northern District of Illinois under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §1001 *et seq.* (1982)). The court determined that, because Gadsby was not a participant under ATI's plan, he lacked standing to bring an action under ERISA and dismissed the suit.

On July 23, 1984, plaintiffs commenced this action in which a number of counts were pleaded, dismissed and repleaded. The following claims are pertinent to this appeal. Count IV of the complaint alleged violations of the Illinois Insurance Code and was dismissed on the grounds ATI's medical plan is governed by ERISA (29 U.S.C §1001 *et seq.* (1982)) and not the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 613 *et seq.*). Counts I and II of the first amended complaint set forth claims for common law fraud against ATI and HIA, respectively, and count VII alleged a breach of contract implied in fact. The trial court granted defendants' motion to strike and dismiss these counts pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), for failure to state a cause of action. Count V of the first amended complaint set forth a claim against ATI for breach of contract. The trial court granted ATI's, and denied Gadsby's, motion for summary judgment finding no breach of contract.

Plaintiffs contend that defendants violated the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 613 *et seq.*) by (1) misrepresenting facts or policy provisions relating to health insurance coverage; (2)

failing to promptly respond to and investigate plaintiff's claims under ATI's medical insurance plan; and (3) failing to notify Gadsby regarding his rights of continuation or conversion under the plan. In essence, plaintiffs allege a breach of fiduciary responsibility in the administration of ATI's medical and hospitalization insurance plan. We conclude, as the trial court did, that plaintiffs' claim for alleged violations of the Illinois Insurance Code is preempted by ERISA.

■ Initially, we note that the parties apparently do not dispute that ATI's medical insurance plan is governed by ERISA, a conclusion which comports with ERISA's provisions. ERISA regulates employee benefit plans, which include both pension and welfare benefit plans. An employee welfare benefit plan includes, among other things, "any plan, fund or program *** maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits." (29 U.S.C. §1002 (1982).) Involved in this case is a plan adopted by ATI to provide medical and health benefits to its employees.

■ ERISA preempts "any and all State laws insofar as they *** relate to an employee benefit plan" (29 U.S.C. §1144(a) (1982)) unless the State claim is "too tenuous, remote or peripheral." (*Shaw v. Delta Airlines, Inc.* (1983), 463 U.S. 85, 101 n.21, 77 L. Ed. 2d 490, 503 n.21, 103 S. Ct. 2890, 2901 n.21.) The term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." (29 U.S.C. §1144(c) (1982).) Not only are State law causes of action relating to a plan preempted, but this provision also supersedes State decisional law relating to an employee benefit plan. (*Arnold v. Babcock & Wilcox Co.* (1987), 154 Ill. App. 3d 863, 870, 507 N.E.2d 218.) The term "State" includes "a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans." (29 U.S.C. §1144(c) (1982).) State laws are preempted if the conduct sought to be regulated is part of or arises from the administration of an employee benefit plan. (*Scott v. Gulf Oil Corp.* (9th Cir. 1985), 754 F.2d 1499, 1504.) Here, we conclude that plaintiffs' claims under the Illinois Insurance Code directly relate to the administration of ATI's medical insurance plan and are thus preempted.

■ Regarding plaintiffs' claim against HIA, we note that the only relationship between them is *vis-a-vis* ATI's medical insurance plan. HIA, by virtue of its contract with ATI, is responsible for processing claims under the plan. Thus, there is a direct connection between HIA and the administration of ATI's medical insurance plan. While HIA is

not a fiduciary of ATI's plan and is, thus, not regulated by ERISA (see 29 U.S.C. §1002(2)(A) (1982)), claims against nonfiduciary plan administrators which relate to employee benefit plans have been held to be preempted by ERISA. *Howard v. Parisian, Inc.* (11th Cir. 1987), 807 F.2d 1560, 1564 (the plaintiff's claim against the defendant, for benefits after his coverage ceased, who was responsible for claim-processing, investigatory and record-keeping duties, was preempted by ERISA); see also *Light v. Blue Cross & Blue Shield of Alabama, Inc.* (5th Cir. 1986), 790 F.2d 1247, 1248-49.

██ █ We also conclude that plaintiffs' claim against ATI arises from the administration of an employee benefit plan. The Supreme Court has held that State actions based on improper handling of claims under an employee benefit plan are preempted by ERISA. (*Pilot Life Insurance Co. v. Dedeaux* (1987), 481 U.S. 41, 47-48, 95 L. Ed. 2d 39, 48, 107 S. Ct. 1549, 1553.) Plaintiffs' allegations that ATI misrepresented plan provisions and failed to promptly respond to and investigate claims under the plan clearly relate to improper claims processing under the terms of ATI's medical plan. Plaintiffs' claim that ATI failed to notify Gadsby of his rights of continuation or conversion under ATI's plan is also preempted. In *Russo v. Boland* (1982), 103 Ill. App. 3d 905, 431 N.E.2d 1294, the court addressed an analogous claim. The plaintiff was employed by, and participated in, the defendant's medical insurance plan. The plaintiff terminated his employment and was not eligible for further participation in the defendant's plan after his termination date because he was no longer an employee or dependent of an employee. The plaintiff alleged that the defendant's failure to provide for a conversion policy violated the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 979e). As in this case, the defendant's plan was self-insured. The court held that the plaintiff's claim was preempted by ERISA, and not "saved" from preemption by ERISA's "saving" clause. (See 29 U.S.C. §1144(b)(2)(A) (1982).) ERISA's "saving" clause saves from preemption any State law which regulates, among other things, insurance. (29 U.S.C. §1144(b)(2)(A) (1982).) ERISA's "deemer" clause makes it clear that, with certain exceptions not relevant here, no employee benefit plan "shall be deemed to be an insurance company or other insurer *** or to be engaged in the business of insurance or *** for purposes of any law of any State purporting to regulate insurance companies, insurance contracts." (29 U.S.C. §1144(2)(B) (1982).) The court held that a State cannot regulate an employee benefit plan merely because the plan is self-insured. *Russo v. Boland* (1982), 103 Ill. App. 3d 905, 909-10, 431 N.E.2d 1294, citing *Wadsworth v. Wha-*

*land* (1st Cir. 1977), 562 F.2d 70, 77.

We also note that, while not effective until September 17, 1982, the Illinois legislature has specifically excluded self-insured medical plans or other employee welfare benefit programs from regulation under the Illinois Insurance Code. See Ill. Rev. Stat. 1985, ch. 73, pars. 734—1, 734—4.

Plaintiffs argue that the "saving" clause applies in this case, and principally rely on *Metropolitan Life Insurance Co. v. Massachusetts* (1985), 471 U.S. 724, 85 L. Ed. 2d 728, 105 S. Ct. 2380. There the Supreme Court analyzed the State insurance laws that applied to insurance companies that provided coverage for employee health benefit plans. The State law required insurance companies that sold group insurance policies to provide for mental health care benefits. Relying on the saving clause, the Court concluded that the insurers could not avoid State regulation simply because they sold insurance to plans covered by ERISA. The Court specifically affirmed that State regulations which directly apply to employee benefit plans are not saved from preemption. (471 U.S. at 735 n.14, 85 L. Ed. 2d at 737 n.14, 105 S. Ct. at 2387 n.14.) The Court thus limited its ruling to the application of State laws to companies in the insurance industry. See 471 U.S. 724, 85 L. Ed. 2d 728, 105 S. Ct. 2380; see also *Pilot Life Insurance Co. v. Dedeaux* (1987), 481 U.S. 41, 50, 95 L. Ed. 2d 39, 49, 107 S. Ct. 1549, 1554, (a State law which regulates insurance and is, thus, saved must be specifically directed towards the insurance industry).

The other cases relied on by plaintiffs are not applicable here. In *Bloese v. Board of Education* (1985), 138 Ill. App. 3d 460, 485 N.E.2d 1276, *appeal denied* (1986), 111 Ill. 2d 580, the school board's employee health benefit plan was not covered by ERISA because ERISA specifically excludes from coverage any plan maintained by a governmental agency. (138 Ill. App. 3d at 465.) In *Wayne Chemical, Inc. v. Columbus Agency Service Corp.* (7th Cir. 1977), 567 F.2d 692, the insurance plan which was sought to be regulated was not an employee benefit plan, but a group insurance policy not governed by ERISA. 567 F.2d at 698.

■ Because defendants do not argue that plaintiffs' breach of contract, breach of contract implied in fact, and fraud claims are preempted by ERISA, we do not consider the issue. (*Cf. Golen v. Chamberlain Manufacturing Corp.* (1985), 139 Ill. App. 3d 53, 56-58, 487 N.E.2d 121, *appeal dismissed* (1986), 111 Ill. 2d 581 (the plaintiff's claim that the defendant breached its employment contract to pay the plaintiff pension benefits equivalent to those pension benefits he would have been entitled to under the defendant's pension plan, as-

suming plaintiff's years of service with a prior employer were added to the term of his employment with the defendant, only tangentially impacted the defendant's ERISA plan and was not preempted by ERISA); accord *Welsh v. Northern Telecom, Inc.* (1987), 85 N.C. App. 281, 354 S.E.2d 746. But see *Nevill v. Shell Oil Co.* (9th Cir. 1987), 835 F.2d 209, 212 (State claims for breach of contract, breach of covenant of good faith and fair dealing, and fraud related to enforcement of ERISA plan and are preempted by ERISA); *Pane v. RCA Corp.* (D.N.J. 1987), 667 F. Supp. 168, 172 (regardless of whether the plaintiff was covered by defendant's ERISA plan, where plaintiff's separate severance contract was closely tied to the issue of his inclusion in the defendant's severance plan, the plaintiff's State claim was preempted); *Ogden v. Michigan Bell Telephone Co.* (E.D. Mich. 1983), 571 F. Supp. 520, 524 (the plaintiff's State claims of fraud and misrepresentation in connection with the defendant's ERISA plan were preempted by ERISA regardless of whether the plaintiff was actually covered by the plan).

■ ■ Gadsby next contends that the trial court erred in granting ATI's, and denying his, motion for summary judgment because the provision of the employment contract between Gadsby and ATI relating to medical coverage in the event of Gadsby's retirement was unambiguous, obligating ATI to contact its group insurance carriers to determine whether medical insurance could be obtained for Gadsby, irrespective of the eligibility provisions in ATI's medical and hospitalization insurance plan. We agree with the trial court's finding that ATI was obligated to provide Gadsby with medical insurance only if ATI's insurance plan covered retired employees. When the language of a contract is unambiguous the express provisions govern and there is no need for construction or inquiry as to the parties intentions. (*P. A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1986), 112 Ill. 2d 196, 203, 492 N.E.2d 1288.) Whether an ambiguity exists is a question of law and will be found when the language used in a contract is reasonably susceptible to more than one meaning. (*W. H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87, 96, 475 N.E.2d 273.) To determine the intent of the parties, the instrument should be considered in its entirety, and not merely by reference to particular words and isolated phrases. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683; *Carrico v. Delp* (1986), 141 Ill. App. 3d 684, 689-90, 490 N.E.2d 972, *appeal denied* (1986), 112 Ill. 2d 558.) Viewing the employment contract between Gadsby and ATI as a whole, it is clear that ATI was obligated to provide medical insurance to Gadsby only if ATI's group insurance covered retired

employees. The contract provided that, during the pendency of Gadsby's employment, he would be entitled to the same fringe benefits, including medical insurance, as other employees in a similar position. Upon retirement, Gadsby was to be included under ATI's medical insurance plan if permitted by its group insurance carrier. A natural reading of the contract leads us to conclude that the parties intended that Gadsby stand in the same position, for medical insurance coverage, as any other retiree. This is consistent with the undisputed fact that ATI's benefit plan history had not, during any relevant time period, included retiree coverage. To hold otherwise would place a strained construction upon the language in the contract. Gadsby argues that ATI had a duty to contact its insurance carrier to determine whether it would insure him. Extending Gadsby's argument to its logical conclusion, if ATI had inquired as to the cost to insure him, which it did not, and the insurance company agreed to insure him, ATI would be obligated to insure Gadsby, at its expense, no matter how great the cost. One can readily see the oppressive result which could flow from Gadsby's interpretation of the contract, and contracts should be construed to avoid oppressive results. *Peel v. Rolando* (1972), 5 Ill. App. 3d 771, 774, 283 N.E.2d 916.

■■ ■ Gadsby next contends that the trial court erred in dismissing his claim for breach of contract implied in fact for failure to state a cause of action. He argues that a fair reading of the employment contract between ATI and himself reveals an intention that ATI would purchase medical insurance for him. Where an express contract dealing with the same subject matter exists, recovery on an implied contract theory is precluded. (*Walker v. Brown* (1862), 28 Ill. 378, 383; *Decatur Production Credit Association v. Murphy* (1983), 119 Ill. App. 3d 277, 288, 456 N.E.2d 267.) Here, there is an express contract dealing with Gadsby's entitlement to retiree health coverage. We have concluded that the contract required ATI to provide medical insurance for Gadsby only if ATI's medical insurance plan covered retired employees. "As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and implied contract for the same thing, existing at the same time." *Walker*, 28 Ill. at 383.

Gadsby's reliance on *Lindgren v. Metropolitan Life Insurance Co.* (1965), 57 Ill. App. 2d 315, 206 N.E.2d 734, is misplaced. In *Lindgren*, there was an express contract of insurance between the parties, and the plaintiff's employer terminated its group insurance policy without notice to the plaintiff. The court held that the plaintiff could not be divested from the policy without notice. (57 Ill. App. 2d at 319-

20, 206 N.E.2d at 734.) Here, Gadsby was put on notice that his insurance coverage would cease upon his retirement unless ATI's insurance plan covered retired employees.

▮▮ ▮ Plaintiffs also argue that the trial court erred in dismissing counts I and II of the amended complaint for failure to state a cause of action for fraud. To state a cause of action for fraud, the plaintiff must plead acts or facts relied upon to establish the fraud, and fraud must be a necessary or probable inference from the facts alleged. (*Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249, 483 N.E.2d 1263.) The plaintiff must allege facts showing:

> "(1) that the party made a representation of material facts as opposed to opinion; (2) that the representation made was untrue; (3) that the party making the representation knew or believed the representation to be untrue; (4) the person to whom the representation was made had a right to rely on it and in fact did so; (5) that the representation was made for the purpose of inducing the other party to act, or to refrain from acting, upon it and; (6) that the representation made led to the injury of the person who relied upon it." (*Wolford v. Household Finance Corp.* (1982), 105 Ill. App. 3d 1102, 1104, 435 N.E.2d 528, 529-30.)

Moreover, the allegations must be made with specificity, particularity and certainty (*Wolford*, 105 Ill. App. 3d at 1104) and state who made the representation, to whom it was made, when it was made, and what was the representation. *Waterford Condominium Association v. Dunbar Corp.* (1982), 104 Ill. App. 3d 371, 376, 432 N.E.2d 1009.

In count I of plaintiffs' amended complaint, they allege that after Gadsby's retirement ATI continued to deduct, until December 1982, premiums for medical insurance; in February 1982, ATI forwarded Gadsby a copy of its plan document representing that the plan provided medical coverage for Gadsby and his dependents; between February 1, 1982, and April 17, 1982, Gadsby submitted medical claims to ATI for himself and his dependants, which were processed and either paid or applied against the appropriate deductible; ATI falsely represented that Gadsby was covered under the plan when it knew that he was not, for the purpose of inducing Gadsby to believe that he covered under the plan; and Gadsby reasonably relied on ATI's representations. We conclude that these allegations do not warrant a conclusion that fraud is the necessary or probable inference. That ATI continued to deduct insurance premiums from Gadsby's retirement check until December 1982 and processed medical claims after his retirement more reasonably implies a mistake. While it is not necessary

to show that a party making a misrepresentation benefited therefrom (*Bergman & Lefkow Insurance Agency v. Flash Cab Co.* (1969), 110 Ill. App. 2d 415, 428, 249 N.E.2d 729), we note that ATI had nothing to gain by continuing to deduct premiums from Gadsby's retirement check and processing his claims. In fact, ATI was acting to its detriment because its actions would encourage future claims, and ATI's plan was self-funded. Furthermore, plaintiffs do not allege whether the claims processed related to medical expenses incurred before or after Gadsby's retirement. Plaintiffs argue that ATI paid these claims as an elaborate coverup scheme because it failed to purchase medical insurance for Gadsby. Because we have concluded that the contract between ATI and Gadsby did not obligate ATI to provide insurance for Gadsby unless its plan covered retired employees, this argument is without merit. Plaintiffs' allegation that ATI forwarded its plan document to Gadsby representing that he was covered under the plan is refuted by the plan document attached to plaintiffs' complaint. The document clearly defines individuals eligible under the plan, and Gadsby is not within those covered. Regarding plaintiffs' allegation that ATI falsely represented that Gadsby was covered under the plan, plaintiffs have not alleged facts showing when this representation was made and by whom, and it lacks the required specificity.

In count II of plaintiffs' amended complaint, they allege that HIA administered ATI's medical plan pursuant to a claims processing agreement; HIA sent Gadsby an identification card which stated that Gadsby and his eligible dependents had qualified for benefits under the plan; between February 1, 1982, and April 17, 1982, HIA processed and approved medical claims for Gadsby and his dependants; after Gadsby's stroke HIA verbally acknowledged that Gadsby was eligible under the plan; ATI informed HIA in February 1982, that Gadsby had retired; and HIA knew Gadsby was not eligible under ATI's plan but falsely represented that he was not covered. Again, we cannot conclude that plaintiffs have alleged facts which necessarily or probably imply fraud. At most, the facts alleged indicate that HIA was acting in accordance with its claims processing agreement with ATI, and processed claims on, albeit, erroneous information. Plaintiffs have alleged no facts which necessarily imply fraud.

Furthermore, plaintiffs have not alleged facts showing that Gadsby reasonably relied on any misrepresentation. Attached to plaintiff's amended complaint was a copy of ATI's plan document received by Gadsby which details eligibility requirements. The identification card HIA sent Gadsby also indicated that coverage was subject to the terms of the plan document and that current eligibility should be con-

firmed. While a person may rely on a statement without investigation where the person making the false statement inhibits inquiries by creating a false sense of security or blocks investigation (*Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 319, 457 N.E.2d 1335), it must be determined whether the facts were such as to put a reasonable man on inquiry. (*Keeshin v. Levin* (1975), 31 Ill. App. 3d 790, 796, 334 N.E.2d 898.) Here, Gadsby had a copy of Gadsby's medical insurance plan which clearly set forth the eligibility requirements, and he was not within such coverage. Gadsby's identification card warned that the plan provisions controlled. Plaintiffs did not allege that Gadsby inquired and was informed, prior to his stroke, that he was eligible for medical benefits. We conclude that if Gadsby did rely on any alleged misrepresentations, such reliance was unreasonable. *Cf. Floral Consultants, Ltd. v. Hanover Insurance Co.* (1984), 128 Ill. App. 3d 173, 176, 470 N.E.2d 527 (where the plaintiff had received a copy of the insurance policy, a duty was imposed to read the policy and inform the insurer of any discrepancy between the policy and any representation).

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.