RICHARD MUELLER, on behalf of himself and all other persons and entities similarly situated, Plaintiff-Appellee, v. THE CITY OF HIGHLAND PARK, Defendant (The Village of Deerfield, Defendant-Appellant).

Second District   No. 2—87—0275

Opinion filed February 10, 1988.—Rehearing denied March 15, 1988.

Arthur M. Holtzman, of Pedersen & Houpt, P.C., and Siegel & Warnock, both of Chicago (Jack M. Siegel, of counsel), for appellant.

Larry D. Drury, of Larry D. Drury, Ltd., of Chicago, and Andi C. Goldfine, of Highland Park (Berle L. Schwartz, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, the Village of Deerfield (Deerfield), appeals the judgment of the circuit court of Lake County ordering it to pay $212,184.37 to the City of Highland Park (Highland Park). Plaintiff, Richard Mueller, a taxpayer of Highland Park, initiated a class action suit naming both Deerfield and Highland Park as defendants. His four-count complaint alleged: (1) breach of contract and unjust enrichment on the part of Deerfield; (2) breach of fiduciary duty by Highland Park; (3) negligence by Highland Park; and (4) a declaration of the parties' rights, injunctive relief, and an accounting. Just prior to

trial, plaintiff added a fifth count to his complaint seeking to declare a written agreement, entered into by Deerfield and Highland Park after the suit had been commenced, null and void. Following a bench trial, the trial court found that there was an implied contract in law between Deerfield and Highland Park and that Deerfield was obligated to pay Highland Park.

The issues raised in this appeal are: (1) whether the plaintiff has standing, as a taxpayer of Highland Park, to bring suit; (2) whether there was an implied contract in law between Deerfield and Highland Park for the sale of water; and (3) whether there was a valid written contract between Deerfield and Highland Park for the sale of water.

Deerfield purchased water from Highland Park under a 25-year written contract which expired on April 30, 1985. From May 1, 1985, to June 30, 1985, Deerfield continued to receive water at a mutually agreed upon rate of $.67 per 100 cubic feet. Plaintiff does not challenge the $.67 rate for that period.

Beginning in April 1985, Deerfield and Highland Park entered into negotiations for a new water contract. Highland Park sought a rate of $.99 per 100 cubic feet, while Deerfield suggested a rate of $.67 per 100 cubic feet. During the period beginning July 1, 1985, and continuing through March 1986, when the two municipalities reached an agreement as to the rate, Highland Park supplied water to Deerfield and billed it at a rate of $.99 per 100 cubic feet. Deerfield received and used the water but only paid at a rate of $.67 per 100 cubic feet.

On February 5, 1986, plaintiff filed his class action suit. He alleged, *inter alia*, that as a taxpayer and citizen of Highland Park, he had an equitable interest in the money due and owing Highland Park for the water it distributed to Deerfield from July 1, 1985, to the time of the suit. He further alleged that Deerfield expressly agreed to pay for the water at the $.99 rate. Alternatively, he claimed that there was an implied contract in law arising out of Highland Park's providing and Deerfield's accepting the water and, therefore, Deerfield was obligated to pay the $.99 rate as the reasonable value of such water.

In March 1986, Deerfield and Highland Park entered into a written agreement for the sale of water. The agreement's price terms set the rate, beginning January 1, 1986, at $.99 per 100 cubic feet and also provided for future rate adjustments. Additionally, it established the rate for the July 1, 1985, to December 31, 1985, period at $.67 per 100 cubic feet.

After the municipalities entered into the agreement, several events occurred. First, Deerfield paid a sum to Highland Park for the

period between January 1, 1986, and the effective date of the new agreement which was based on the difference between the $.99 rate and the $.67 rate Deerfield had already paid for that period. Second, Highland Park adjusted its accounts whereby the difference between the $.99 rate which was billed and the $.67 rate which was paid for the period of July 1, 1985, to December 31, 1985, would be eliminated as an outstanding debt. Finally, Deerfield began and has continued to pay at the new rates provided in the agreement.

At trial, plaintiff was allowed to add count V to his complaint. This count alleged that the March 10, 1986, agreement was beyond the authority of Highland Park because it was contrary to the public interest of the residents and taxpayers of Highland Park, it constituted an unlawful diversion of municipal funds, and it deprived the taxpayers of due process and equal protection under the Federal and State Constitutions. The count further alleged that the contract was executed in violation of section 3—11—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 3—11—17) and the Highland Park municipal code. Plaintiff asked the court to declare the entire agreement null and void or, in the alternative, declare the agreement null and void insofar as it retroactively set the rate for the July 1 to December 31, 1985, period at $.67 per 100 cubic feet.

At trial, proofs were introduced relevant to the issue of whether an implied contract in law existed between the two municipalities. Between April 1985 and the time the two municipalities finally reached an agreement, there were several letters sent between the city manager of Highland Park and the village manager of Deerfield in an attempt to arrive at a mutually acceptable rate. The respective mayors of both municipalities also exchanged correspondence as to the appropriate rate. Additionally, there were at least two informal meetings in which the municipalities discussed the various proposed water rates. No agreement was reached prior to the suit being commenced.

Additionally, the parties disagreed as to the authenticity of certain exhibits purported to be the true copy of the written agreement between the two parties. Plaintiff submitted a copy of an agreement between the two municipalities which did not contain any language establishing the rate for the July 1, 1985, to December 31, 1985, period. Defendants, on the other hand, submitted what they contended was a certified copy of the actual agreement which does contain language establishing the rate for that period at $.67 per 100 cubic feet.

Plaintiff then called the city clerk of Highland Park as an adverse witness. The city clerk testified that he was familiar with a request for council action form dated March 10, 1986, to which was attached

a copy of a water service agreement which did not contain a provision setting the rate for the July 1 to December 31, 1985, period. He was unable to testify that that was the same water service agreement approved by the Highland Park city council on March 10, 1986. He further stated that defendants' various exhibits, all containing a water service agreement with a clause establishing the rate for the period in question at $.67 per 100 cubic feet, were true and correct copies of the original.

The trial court, in its November 18, 1986, order, found as follows. First, the court determined that plaintiff had standing as a taxpayer based on his "equitable interest as a taxpayer, in the public property which is being illegally disposed of." Second, the court found that a contract implied in law existed for the period of July 1 to December 31, 1985, and that the reasonable value of the water supplied for that period was $.99 per 100 cubic feet. Third, the court determined that it was unnecessary to decide whether the written agreement entered into on March 10, 1986, was a valid contract because the difference between the $.99 and $.67 rate for the July 1 to December 31, 1985, period ($212,184.37) under the implied contract was an amount due and owing and, therefore, could not be settled or compromised by contract or otherwise. Fourth, the court denied punitive damages and awarded attorney fees and costs to be paid out of the damages award. Finally, the court declared the written agreement between Highland Park and Deerfield to be null and void to the extent that it set the rate for the July 1 to December 31, 1985, period at $.67 per 100 cubic feet.

■ We first address the issue of whether plaintiff has standing to sue in this case as a taxpayer of Highland Park. *Paepcke v. Public Building Comm'n* (1970), 46 Ill. 2d 330, 263 N.E.2d 11, is controlling as to this issue. In *Paepcke*, our supreme court held that a taxpayer has standing to bring suit, even in the absence of statute, to enforce his equitable interest in public property which he claims is being illegally disposed of. (46 Ill. 2d at 341.) Such right to sue does not depend on his pleading special damages to his property that are different in degree and kind from those suffered by the general public. (46 Ill. 2d at 341.) Moreover, the *Paepcke* decision specifically overruled all prior decisions that required allegations and proof of special damages in a suit brought by a taxpayer. 46 Ill. 2d at 341; see also *Metropolitan Sanitary District ex rel. O'Keeffe v. Ingram Corp.* (1981), 85 Ill. 2d 458, 476, 426 N.E.2d 860.

In the present case, plaintiff initiated this suit as a taxpayer and citizen of Highland Park. He claimed an equitable interest in "all

monies due and owing" for the water supplied by Highland Park to Deerfield and in "all of Highland Park's water supply and service which is being illegally distributed without compensation." Plaintiff has clearly identified the public property in which he claims an interest. Under *Paepcke,* he need not allege any other interest. We note that plaintiff did not bring suit pursuant to section 1—5—1 of the Illinois Municipal Code, which confers taxpayer standing (Ill. Rev. Stat. 1985, ch. 24, par. 1—5—1), and, accordingly, we do not address his standing under that provision.

■ Deerfield also argues that plaintiff was required to allege an injury in fact to some substantive, legally protected interest, citing *Tarkowski v. Scott* (1979), 79 Ill. App. 3d 787, 398 N.E.2d 891. Deerfield's reliance on *Tarkowski,* however, is misplaced. *Tarkowski* simply stands for the proposition that a plaintiff must allege in his complaint an occurring or imminent injury in fact to his protected interest. (79 Ill. App. 3d at 789-90.) Unlike *Tarkowski,* wherein the allegations were "abusive, speculative and conclusory," here, plaintiff specifically identified the injury as Deerfield's refusal to pay for, and Highland Park's failure to collect, certain monies alleged to be due and owing to Highland Park. Plaintiff has standing to bring suit and sufficiently alleged a cause of action in this case.

Plaintiff contends that a contract implied in law existed whereby Deerfield was obligated to pay Highland Park at a rate of $.99 per 100 cubic feet for the water received between July 1 and December 31, 1985. The trial court found that an implied contract in law did exist between the two municipalities and that the reasonable value of the water was $.99 per 100 cubic feet. Under the circumstances of this case, we find the trial court erred as a matter of law.

■ Municipal corporations have broad power to contract among themselves. (See Ill. Const. 1970, art. VII, §10; *Village of Sherman v. Village of Williamsville* (1982), 106 Ill. App. 3d 174, 178, 435 N.E.2d 548.) Municipalities are specifically authorized to contract for a water supply (Ill. Rev. Stat. 1985, ch. 24, par. 11—124—1) and establish all necessary rules and regulations concerning the use and supply of water (Ill. Rev. Stat. 1985, ch. 24, par. 11—125—3). A Highland Park ordinance reflects this grant of authority and provides:

> "Nothing contained herein shall be deemed to limit the power or authority of the City of Highland Park to *negotiate or fix rates,* by contract or otherwise for users outside of the City of Highland Park, other than those rates provided herein." (Emphasis added.) Highland Park, Ill., Municipal Code §50.280 (1968).

A contract implied in law is an equitable principle that is totally unrelated to traditional concepts of contract law. (*Premier Electrical Construction Co. v. La Salle National Bank* (1984), 132 Ill. App. 3d 485, 496, 477 N.E.2d 1249; *In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 690, 461 N.E.2d 1075.) When services or property are provided, the law presumes that they are given and received with the expectation of payment, and, consequently, a promise to pay their reasonable worth is implied. *Premier Electrical Construction Co.*, 132 Ill. App. 3d at 496, 477 N.E.2d at 1257; *In re Estate of Milborn*, 122 Ill. App. 3d at 690, 461 N.E.2d at 1078.

■ The evidence in this case, however, indicates that the two municipalities were simply engaged in negotiating a contract for the sale of water, as they were authorized to do by statute and ordinance. Beginning in April 1985, and continuing until the time that they finally reached an agreement, both municipalities sent correspondence and conducted meetings between themselves in an effort to consummate a water contract. In fact, the record reflects that they had agreed on all essential terms of the new contract except that of price, which they eventually agreed upon in March 1986. Although the negotiations were somewhat protracted in this case, they remained active and ongoing.

During this time, Highland Park did supply water services to Deerfield as an incident to the negotiation process. Even though it desired and billed at a $.99 rate for the water, Highland Park was willing to continue to supply water at a $.67 rate in the hope of obtaining a mutually acceptable rate. The final agreement, eventually reached, reflects a compromise by both parties as to the appropriate water rate. There is no evidence in this record to support a finding that there was an implied contract in law where one municipality supplied and the other accepted water while contract negotiations continued as to the price of the water.

Moreover, the intention of the parties clearly was to enter a contract for the supply of water services to Deerfield. The parties negotiated to that end. If the parties later entered into a valid contract, there cannot be a recovery on an implied contract. *Walker v. Brown* (1862), 28 Ill. 378, 384; *Concord Industries, Inc. v. Harvel Industries Corp.* (1984), 122 Ill. App. 3d 845, 847-48, 462 N.E.2d 1252; *Decatur Production Credit Association v. Murphy* (1983), 119 Ill. App. 3d 277, 288, 456 N.E.2d 267.

■ The next issue is the validity of the March 1986 written agreement. The trial court ruled that it need not reach the question of the contract's validity because there was a debt due and owing based

upon the difference between the $.67 rate paid by Deerfield during the July 1 to December 31, 1985, period and the $.99 rate under the implied contract for that same period and that an attempt by a municipality to settle the debt, by contract, for less than the amount due would be an unlawful attempt to divert public funds.

In arriving at its decision, the trial court relied on *People v. Holten* (1919), 287 Ill. 225, 122 N.E. 540. The *Holten* court held that a municipality may not compromise "a claim which is *not doubtful*, for less than the full *amount due*." (Emphasis added.) (*Holten*, 287 Ill. at 232, 122 N.E.2d at 543.) Because an implied contract in law theory, the basis relied upon by the trial court in concluding there was an unequivocal debt due and owing, is an inappropriate theory of recovery in this case, there no longer exists any proper basis for the trial court's ruling that it need not address the written contract's validity.

Furthermore, municipalities, like other parties, are strongly encouraged to settle their differences, even by written contract. (*Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 192, 280 N.E.2d 552; *Mangel & Co. v. Village of Wilmette* (1969), 115 Ill. App. 2d 383, 396, 253 N.E.2d 9.) As discussed earlier, the two municipalities, here, were involved in ongoing negotiations in an attempt to resolve their differences as to the price term. The written contract finally entered into reflects a compromise of the municipalities' respective positions on what an appropriate rate should be and not a discharge of a debt due and owing Highland Park.

■ We address next the validity of the written agreement between the two municipalities. Plaintiff's only argument on appeal is that the written agreement, offered by defendants below as evidence of the contract which was purportedly approved by the city council of Highland Park on March 10, 1986, is not the same agreement that was presented to the Highland Park city council on March 10, 1986. Specifically, plaintiff relies on his own exhibit which is a copy of a "request for council action" form to which is attached a copy of a written water service agreement that does not contain any reference to the rates for the July 1 to December 31, 1985, period. Thus, he argues that the Highland Park city council never approved the $.67 rate for the period in question and, therefore, there is no valid contract as to the rates for that period.

There is, however, overwhelming evidence demonstrating that the contract approved by the Highland Park city council did, in fact, contain a clause setting the rate for the July 1 to December 31, 1985, period at $.67 per 100 cubic feet. Defendants' exhibits included two documents prepared by the city clerk of Highland Park certifying that

an attached water service agreement was the one passed and approved by the Highland Park city council on March 10, 1986. The water service agreement attached to each certification contains a clause establishing the rate at $.67 per 100 cubic feet for the July 1 to December 31, 1985, period. Furthermore, defendants' exhibit No. 6, another document prepared by Highland Park's city clerk, certifies an attached resolution by the Highland Park city council authorizing the execution of a water service contract passed and approved at the city council meeting on March 10, 1986. That resolution refers to an attached exhibit number one which is a water service agreement containing a provision which set the rate for the period in question at $.67 per 100 cubic feet.

■■ Under Illinois law, municipal records may be proved by a copy certified under the signature of the city clerk (Ill. Rev. Stat. 1985, ch. 110, par. 8—1203), and such certification is done under penalty of law (Ill. Rev. Stat. 1985, ch. 110, par. 8—1207). The city clerk testified as to the various certifications at issue here. There is nothing in the record to indicate any wrongdoing or error on his part in the preparation of the certifications. We find, therefore, that, in light of the evidence presented, the written agreement containing the $.67 rate provision was properly considered and approved by Highland Park and as such is a valid contract.

Finally, we note that plaintiff filed a motion to strike portions of Deerfield's reply brief or, alternatively, to supplement the record on appeal. Deerfield answered the motion, and we ordered this matter to be taken with the case. We grant plaintiff's motion, in part, and strike references in Deerfield's brief to Lake Michigan water allocation permits, there being no reference to them in the trial record.

For the foregoing reasons, we reverse the judgment of the circuit court of Lake County for plaintiff against Deerfield for $212,184.37 and attorney fees and enter judgment in favor of Deerfield.

Reversed.

WOODWARD and NASH, JJ., concur.