In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 10-2114, 10-2243, 10-2814 & 10-2921

JOHN MARCATANTE, et al.,

*Plaintiffs-Appellees,*

*v.*

CITY OF CHICAGO, ILLINOIS,
a municipal corporation,

*Defendant-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 0328—**Charles P. Kocoras**, *Judge.*

ARGUED MAY 2, 2011—DECIDED AUGUST 24, 2011

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* The plaintiffs are retired City of Chicago employees who were members of several trade unions. They were offered incentives to retire early under an Early Retirement Incentive Program (ERIP) and did so in early 2004 while their unions were still negotiating new Collective Bargaining Agreements (CBAs) for the 2003-2007 period. During the negotiation

process, the 1999-2003 CBAs governed the parties' relationships. In 2005, after two years of negotiations, the City and unions agreed to make raises retroactive to July 2003, but only for current employees, employees laid off with recall rights, and seasonal employees eligible for rehire, not for the plaintiff retirees. The plaintiffs brought this class action claiming entitlement to retroactive wage increases between July 2003 and their retirement dates. The certified class consists of coalition union members who retired under the ERIP between July 2003 and July 2005.

The parties filed cross-motions for summary judgment. The district court granted the City's motion on the plaintiffs' federal claims (due process and equal protection) and state law breach of express contract claim. The court, however, granted summary judgment to the plaintiffs on their state law implied contract claim and awarded the class $1,773,502 in retroactive pay, plus attorney's fees. The City appeals the district court's grant of summary judgment on the plaintiffs' implied contract claim and the plaintiffs cross-appeal on their due process and breach of express contract claims; the plaintiffs do not challenge the adverse judgment on their equal protection claim. The district court's original jurisdiction derives from the federal claims, *see* 28 U.S.C. § 1331, and the accompanying state law claims fall within the court's supplemental jurisdiction, *see* 28 U.S.C. § 1367(a).

We reverse the district court's entry of summary judgment in favor of the plaintiffs on their implied contract claim and otherwise affirm. Because express contracts—

the 1999-2003 CBAs—governed the plaintiffs' wages, their implied contract claim cannot succeed. Before the plaintiffs accepted the ERIP benefits, there was uncertainty as to whether they would receive retroactive wages under the 2003-2007 CBAs. The ERIP provided enhanced pension benefits, but conspicuously missing from it was any suggestion of entitlement to retroactive wage increases. No doubt the plaintiffs hoped for wage increases, but they had no right to them. A June 2003 letter agreement between the City and the unions didn't confer such a right; it merely extended the 1999-2003 CBAs (and existing wages) during contract negotiations and made agreed-upon wage increases, if any, retroactive. The City and the union negotiated and didn't agree to give the plaintiffs wage increases; this was entirely consistent with the 2003 letter agreement. Accordingly, the plaintiffs' claims for breach of implied and express contract fail as a matter of law. The plaintiffs' due process claim similarly fails because there is no evidence that the City made misrepresentations to induce them to retire early.

## I. Facts

The plaintiffs, as City of Chicago employees, were members of trade unions that joined together as a coalition during collective bargaining with the City. The plaintiffs were covered under the 1999-2003 CBAs as "prevailing wage rate" employees—those employees working at jobs classified as prevailing wage jobs. "Prevailing wage rate" is a term that the City and the unions use to refer to the hourly rate paid to crafts or job classi-

fications doing similar kinds of work in Cook County pursuant to the formula used by the United States Department of Labor (DOL) in administering the Davis-Bacon Act. Certain other employees received a negotiated wage rate.

Before the plaintiffs' 1999-2003 CBAs were set to expire on June 30, 2003, the coalition's representative provided notice that the unions would not renew the existing agreement. The unions and the City began negotiating successor agreements for 2003-2007. Because the parties were unable to reach an agreement by the 1999-2003 CBA expiration date, they agreed to extend the current CBAs while negotiations continued. The City and the unions entered into the following letter agreement on June 26, 2003:

> This will confirm our conversations regarding the extension of the Coalition Unions' contracts which are due to expire at midnight June 30, 2003. It is understood and the parties agree to extend the terms of all current agreements through midnight July 30, 2003. Thereafter, the agreements shall continue on a day-to-day basis subject to termination by either party upon ten (10) days written notice.

> During the extension period the terms of such agreements shall continue without change.

> In consideration of the extension of the current agreements, the City agrees that wage increases, *if any*, agreed to by the parties shall be retroactive to July 1, 2003, unless the parties mutually agree to another date.

(A28-29) (emphasis added). The City handwrote "if any" into the agreement; the City and unions signed this modified agreement.

The City and the unions had begun discussions for new CBAs in the spring of 2003. The unions wanted wage increases, but because the City was facing a serious budget deficit, it wasn't prepared to commit to wage increases without certain work rule concessions. The City initially offered two proposals that included raises for "prevailing wage rate employees": (1) defer raises for six months until January 2004 at which point the prevailing wage rate would be increased on a yearly basis; and (2) provide rate increases as of July 2003 on a one-time, one-year basis (but no raise guarantee after July 1, 2004). Both proposals included a number of work rule changes designed to offset the cost of the raises, such as unpaid furlough days, changes in work hours, and reductions in reporting and call-in pay. The unions rejected these proposals.

In late 2003, while negotiations for the 2003-2007 CBAs were still ongoing, the City offered employees an incentive package to retire early under the ERIP. The incentives included the ability to purchase up to five years of credited services for one-half the usual cost to increase the employee's annuity (each year of service purchased would allow the retirees' age to be deemed one year older than it actually was) and the ability to receive an annuity that was not discounted for retirement before age sixty. After attending seminars to learn about the ERIP, each named plaintiff took ad-

vantage of the program and retired in either February or March 2004.

At the time of the plaintiffs' retirements, negotiations between their unions and the City were still ongoing. During negotiations, the unions and the City discussed whether any pay raises would be given, who would receive them, and whether they would be applied retroactively. Among other proposals, the City proposed retroactive pay increases effective various dates. The unions and the City specifically discussed whether former employees, including plaintiff retirees, should be given retroactive pay raises. The unions pushed for employees who retired after June 2003 to get the increase. In July 2005, the City offered to give retroactive raises to those retirees in exchange for active employees taking two unpaid furlough days, but the unions rejected this proposal.

The parties finally reached a tentative agreement in July 2005. In the 2003-2007 CBAs, the unions agreed to various work rule concessions and the City agreed to the hourly "prevailing wage rate" of pay, as established by the DOL for similar job classifications in Cook County, effective July 1, 2003, for employees who had received that rate under prior agreements. The raise, however, was retroactive only for employees who were either on the payroll, were on layoff with recall rights, or were seasonal employees eligible for rehire as of July 18, 2005. Shortly thereafter, the parties also agreed to a wage increase for non-prevailing rate employees. The City Council ratified the successor CBAs in October 2005.

The City's chief labor negotiator, Michael Duffee, testified that with every CBA "[t]he City does something different . . . as to who gets—if there is retroactivity, who gets it and how much." The named plaintiffs attested that when they retired, they understood that their rate of pay was still being negotiated. They believed they would eventually receive the "prevailing wage rate" for the work they performed after June 30, 2003, because they had received retroactive wage increases under prior contracts and have historically received the same "prevailing wage rate" as persons in their unions who worked in identical job classifications. Also, employees who retired during contract negotiations for the 1999-2003 CBAs received retroactive pay increases for work they performed after July 1999.

## II. Discussion

Before diving into the merits, we first address the propriety of plaintiffs' cross-appeal. In their initial brief, the plaintiffs didn't indicate they were seeking to expand or modify the judgment in their favor. They requested that "the Court affirm the district court's decision in this matter in its entirety. Alternatively, if, and only if, the Court reverses the district court's decision that Plaintiffs are entitled to summary judgment on [their implied contract claim], Plaintiffs request that the Court reverse the district court's decision granting summary judgment to the City, and denying summary judgment to Plaintiffs, on [their breach of contract and due process claims], and that the Court remand this matter for further proceedings."

It is improper to file a cross-appeal to merely assert an alternative ground of affirmance. *See Stone Container Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 165 F.3d 1157 (7th Cir. 1999). "A cross-appeal is necessary and proper only when the appellee wants the appellate court to alter the judgment (the bottom line, not the grounds or reasoning) of the district court." *Id.; see also Jones Motor Co. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1191 (7th Cir. 1999) ("The cross-appeal (which is contingent because the ruling is of no consequence if we affirm the judgment for the defendants) is improper, because it does not seek an alteration of the judgment."). When plaintiffs are arguing alternative grounds for affirmance they can do so in their response brief without cross appealing. *See Am. Land Holdings of Ind., LLC v. Jobe*, 604 F.3d 451, 453 (7th Cir. 2010); *see also Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 9 F.3d 1236, 1240 (7th Cir. 1993).

The plaintiffs concede they are not seeking any additional relief on their breach of contract claim, so their cross-appeal on that count is improper. In their reply brief on cross-appeal and at oral argument, they argue that they are seeking a modified judgment as to their due process claim. If successful on their due process argument, the plaintiffs contend they would be entitled to prejudgment interest and statutory attorney's fees under 42 U.S.C. § 1988 (as opposed to the attorney's fees awarded on their state law claim under the common fund doctrine). The City also concedes that if the plaintiffs succeed on due process grounds, the case must be remanded so the district court can determine an appro-

priate measure of damages. Accordingly, the due process claim would have provided a proper basis to cross-appeal, but the plaintiffs never indicated they were seeking any type of modified relief or alteration in the judgment until their reply brief. Issues raised for the first time in a reply are waived. *See In re Sokolik*, 635 F.3d 261, 268 (7th Cir. 2011). The plaintiffs ask for the district court's opinion to be affirmed in its entirety. They seek an alternative ground for relief, but they didn't follow that up with a request for a modified judgment. Because they didn't seek additional relief, their cross-appeal is improper and must be stricken. Even considering the plaintiffs' breach of contract and due process claims as alternative grounds for affirmance, s*ee Jones Motor Co.*, 197 F.3d at 1191-92 (dismissing improper cross-appeal but considering the alternative ground for affirmance), we find that the district court properly dismissed these claims.

Now on to the merits. We review a district court's grant of summary judgment de novo, construing all facts and reasonable inferences in the light most favorable to the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Cross-motions for summary judgment do not waive the right to a trial; rather, we treat the motions separately in determining whether judgment should be entered in accordance with Rule 56. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir.

2008). Finding no genuine issues of material fact, we conclude that the district court erred in granting summary judgment to the plaintiffs on their implied contract theory and hold that summary judgment should have been entered in favor of the City. We otherwise affirm the district court's grant of summary judgment in favor of the City on the plaintiffs' breach of express contract and due process claims.

## A. State Law Claims

The plaintiffs' primary argument on appeal is that they continued to work for the City after the 1999-2003 CBAs expired with the mutual understanding and expectation that the City would later reach a final agreement regarding their wage rate. They claim an implied contract formed because "the City had entered into an agreement with Plaintiffs under which the City accepted Plaintiffs' work but left the final rate of pay unstated pending agreement at a later date." Because no final agreement was ever reached for their wages, they assert that the court must imply a contract term for a reasonable rate of pay. The plaintiffs claim that the following facts gave rise to an implied contract for raise increases: employees who continued working for the City in the same job classifications received retroactive wage increases for the time period at issue; the plaintiffs' wages were generally tied to "prevailing wage rates"; the City offered wage increases shortly before and after the 1999-2003 CBAs were set to expire; the City agreed to make any wage increases retroactive in the

June 26, 2003 letter agreement; and the plaintiffs, and past retirees who had retired during contract negotiations, had historically received retroactive pay increases. The district court found the plaintiffs' argument persuasive, concluding that the City breached an implied contract under Illinois law and reasoning that the City's acceptance of plaintiffs' services entitled them to reasonable pay from July 2003 through the date of their retirement. Reasonable pay, the court found, was the rate the City was willing to pay retroactively to other employees. For the reasons set forth below, we conclude that the district court's finding of an implied contract was in error.

The plaintiffs initially contend that the City waived its arguments that (1) "[p]laintiffs' employment could not be altered by an implied contract because it was covered by an express contract," and (2) "there was no implied contract giving plaintiffs retroactive wage increases," because the City did not sufficiently develop these arguments before the district court with proper citations to relevant legal authority.[1] We disagree. The City raised both in its memorandum in support of summary judgment, s*ee* Doc. 66, and raised similar arguments in response to the plaintiffs' motion for summary judgment, *see* Doc. 97. The burden on the moving party is

---

[1] The plaintiffs also assert that the City waived its argument that "the implied contract is not legally binding on the City pursuant to 65 ILCS 5/8-1-7(a)" (prior appropriations statute). Because we find that there was no implied contract, we need not address the prior appropriations statute.

discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case. *See Crawford v. Countrywide Home Loans, Inc.*, ___ F.3d ___, No. 10-3135, 2011 WL 2906157, at *5 (7th Cir. July 21, 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the City challenged the factual support and legal soundness of plaintiffs' claim, the plaintiffs acquired the burden of demonstrating that genuine issues remained for trial. *See Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007) ("To survive summary judgment, [the plaintiffs] must make a sufficient showing of evidence for each element of [their] case that [they] bear[ ] the burden of proving at trial."). They didn't meet that burden.

Pursuant to Illinois law (the parties agree that the state law claims are controlled by Illinois law), an implied contract is created by law as a result of the parties' conduct. *Zadrozny v. City Colls. of Chi.*, 581 N.E.2d 44, 47 (Ill. App. Ct. 1991). It can either be implied in fact or in law. *Id.* The plaintiffs appear to rest their claim on an implied-in-fact contract, but for completeness, we address both. "A contract implied in fact is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions [on] the part of the promisor which show an intention to be bound." *Estate of Jesmer v. Rohlev*, 609 N.E.2d 816, 820 (Ill. App. Ct. 1993). Such a contract "consists of obligations arising from an agreement where an agreement has not been expressed in words." *In re Marriage of Bennett*, 587 N.E.2d 577, 580 (Ill. App. Ct. 1992). It is "a true contract, containing all necessary elements

of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *A.E.I. Music Network, Inc. v. Bus. Computers, Inc.*, 290 F.3d 952, 956 (7th Cir. 2002) (quotations omitted) (Illinois law); *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 726 (7th Cir. 2010) ("That is the significance of 'in fact': the circumstances allow an inference that the parties had a deal (a 'meeting of the minds') even though there was no statement to that effect.") (Illinois law).

"[A]n implied contract cannot coexist with an express contract on the same subject." *Maness v. Santa Fe Park Enters., Inc.*, 700 N.E.2d 194, 201 (Ill. App. Ct. 1998) (holding that express contract negated the existence of any implied-in-fact contract and rejecting contention that alleged implied-in-fact contract supplemented express written contracts). "[P]romises should not be found by process of implication if they would be inconsistent with express provisions that there is no reason to set aside or to hold inoperative." *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 253 (Ill. App. Ct. 1994) (quoting *Corbin on Contracts* § 564 at 297 (1960)). The express contract, however, must govern the same subject matter as that at issue. *Id.*; *see also Gadsby v. Health Ins. Admin., Inc.,* 522 N.E.2d 865, 871 (Ill. App. Ct. 1988).

The plaintiffs cite *Ekl v. Knecht*, 585 N.E.2d 156 (Ill. App. Ct. 1991) in support of their claim that the court must impose an implied contract term because there was no agreement that governed their rate of pay after

July 2003. In *Ekl*, the plaintiffs called a plumber to perform work and were invoiced for that work at what plaintiffs believed was a ridiculous amount. 585 N.E.2d at 160. The court found that there was an implied-in-fact contract to pay for the plumber's services, but regardless of what the plaintiffs anticipated paying, there was no evidence of an express or implied promise to pay defendants' regular charges at the time the contract was formed. *Id.* at 162. The court therefore held that the implied-in-fact contract obliged the plaintiffs to pay a *reasonable* price for the services rendered, not the amount charged by the plumber. *Id.*

Unlike the oral contract in *Ekl,* which did not specify payment terms, the issue of the plaintiffs' pay in this case was the subject of an express agreement. During negotiations, the plaintiffs' pay was governed by the 1999-2003 CBAs that were allowed to continue in effect through the date of their retirement. That agreement was then replaced with the 2003-2007 CBAs, which unfortunately for the plaintiffs, didn't give them raises. Because there was an express agreement that addressed rate of pay for retirees, there can be no implied contract.

For similar reasons the plaintiffs' reliance on *Martin v. Campanaro*, 156 F.2d 127 (2d Cir. 1946) is misplaced. First, it's not precedential authority; it was not decided under Illinois law. Second, it's readily distinguishable. In *Martin*, when the employees' collective bargaining agreement expired, they continued to work for the rate of pay set forth in the expired CBA while the employer and union negotiated new wage terms. 156 F.2d at 128. When

those negotiations reached a stalemate, the dispute was referred to the National War Labor Board, but shortly thereafter, the employer was adjudicated bankrupt. *Id.* The Board issued a "directive order" for retroactive pay increases to the employees. On review, the court in *Martin* held that the Board didn't create rights that were enforceable by the claimants, but nevertheless found a contract implied-in-fact for the reasonable value of their services after the expiration of the CBA. *Id.* at 129.

The court in *Martin* stated that "[w]hen an agreement expires by its terms, if, without more, the parties continue to perform, . . . an implication arises that they have mutually assented to a new contract containing the same provisions as the old." *Id.* But based on the particular facts of the case—the employer's agreement to negotiate new wage terms, the resulting unsuccessful negotiations, the hearings before the Board, and the wartime no-strike pledge given by organized labor—the court found that no reasonable person could believe that the employees agreed to work, in the interval, at their old rates. *Id.* The court held: "We think that here there was a contract 'implied in fact' to pay the reasonable value of the services *unless* a new contract definitizing the wage-rates should be negotiated . . . ." *Id.* at 130 (emphasis added).

Although the plaintiffs place heavy reliance on *Martin*, it gets them nowhere. Here, there was "a new contract definitizing [their] wage-rates" and that contract failed to provide them with pay increases. Despite these facts, the plaintiffs point to the City's past performance and

argue that it was unreasonable to believe that they agreed to work under the old rates. They present evidence that they received retroactive wages increases under prior contracts, they had historically received the same "prevailing wage rate" as persons in their unions who worked in identical job classifications, and under the 1999-2003 CBAs, retired employees received retroactive pay increases. This past performance, however, doesn't create an implied contract because the terms of the CBAs are up for re-negotiation at the end of each contract term, providing the City and the unions with the opportunity to negotiate new terms that vary from past practices and agreements. The City's addition of the words "if any" in the 2003 letter agreement illustrates this point. The plaintiffs participated in the ERIP with the knowledge and understanding that retroactive wage increases were still being negotiated. They may have hoped for retroactive raises, but such a unilateral expectation is insufficient to create an implied contract. *See Zadrozny*, 581 N.E.2d at 48 ("In order to recover on an implied contract, the facts and circumstances must show that, at the time the services were rendered, one party expected to receive payment and the other party intended to make payment."). The facts in this case don't lead to the conclusion reached in *Martin*.

We pause here to consider the plaintiffs' express contract claim because it dovetails into their argument that there

was a mutual understanding for retroactive wages.[2] The plaintiffs contend that the 2003 letter agreement required the City, if it agreed to give raises, to apply them retroactively to *all* employees as of July 2003 and that by only giving active or laid-off employees retroactive wage increases, the City violated the agreement. The district court properly rejected this argument.

The letter states in relevant part: "In consideration of the extension of the current agreements, the City agrees that wage increases, if any, agreed to by the parties [the unions and the City] shall be retroactive to July 1, 2003, unless the parties mutually agree to another date." The letter is unambiguous; it merely contemplated that the City and the unions would continue to negotiate wage

---

[2]  The City raises an exhaustion defense to the plaintiffs' breach of contract claim. The City asserts that this claim should be dismissed because the plaintiffs failed to exhaust the grievance procedures set forth in the 1999-2003 CBAs. The plaintiffs respond that as retirees they weren't required to grieve their complaint, citing *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 540 (7th Cir. 1997) (holding that retirees' claims "for benefits . . . belong to the retirees individually, and the retirees may deal directly with [the employer] in pursuing such claims"). *See also Carnock v. City of Decatur*, 625 N.E.2d 1165, 1169 (Ill. App. Ct. 1993) (holding that because the plaintiff was retired, he wasn't required to exhaust grievance procedures before bringing suit for unused accumulated sick leave). Because we can swiftly dispose of the plaintiffs' breach of express contract claim on the merits, we do not need to address this issue.

increases and made *agreed-upon* wage increases, if any, retroactive to July 2003 (unless they agreed otherwise). After extensive negotiations, the parties didn't agree to give plaintiff retirees retroactive wage increases; this deal was entirely consistent with the terms of the 2003 letter agreement, which in essence, was an agreement to negotiate. "Illinois permits parties to agree to negotiate, and to work toward some goal, without committing themselves to its achievement—or to pay damages if it is not achieved." *Murray v. Abt Assocs., Inc.*, 18 F.3d 1376, 1378 (7th Cir. 1994). Further, the letter is too indefinite to create a contract for retroactive raises not set forth in the more elaborate 2003-2007 CBAs. *Id.* ("Respect for the parties' autonomy in shaping their arrangements, and for the allocation of risks they selected, mean[s] that a court ought not find in a letter . . . the very promise the more elaborate Proposed Term Sheet withheld.").

The plaintiffs' argument similarly falters under an implied-in-law theory, sometimes referred to as a claim in quantum meruit, quasi-contract, or one for unjust enrichment. *See, e.g., Yugoslav-Am. Cultural Ctr., Inc. v. Parkway Bank & Trust Co.*, 763 N.E.2d 360, 367 (Ill. App. Ct. 2001). Unlike contracts implied in fact, contracts implied in law arise notwithstanding the parties' intentions, *Zadrozny*, 581 N.E.2d at 48, and are no contracts at all, *Barry Mogul*, 643 N.E.2d at 251. They are instead governed by equitable principles. *Klekamp v. City of Burbank*, 639 N.E.2d 241, 245 (Ill. App. Ct. 1994). Under this theory, "a plaintiff asks the court to remedy the fact that the defendant was 'unjustly enriched' by imposing a contract." *Village of Bloomingdale v. CDG Enter. Inc.*, 752

N.E.2d 1090, 1101 (Ill. 2001). To succeed, the plaintiffs must show (1) that they performed a service to benefit the defendant; (2) they performed the service non-gratuitously; (3) the defendant accepted their services; and (4) no contract existed to prescribe payment for this service. *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.,* 931 N.E.2d 810, 825 (Ill. App. Ct. 2010). Similar to the implied-in-fact theory of recovery, there can be no contract implied in law where an express contract or a contract implied in fact exists between the parties and concerns the same subject matter. *Zadrozny*, 581 N.E.2d at 48.

Because there is an express contract that governed the plaintiffs' wages, there can be no implied-in-law contract, nor would equity require finding an implied contract here. In *Klekamp*, the court rejected the plaintiffs' argument of an implied-in-law contract under similar facts. The plaintiffs in that case were firefighters/paramedics hired by the city. 639 N.E.2d at 242. They were compensated as firefighters during their first two years of probationary status, and then paid as paramedics pursuant to the City's then-existing policy. *Id.* at 243. The City later changed its policy to pay firefighters/paramedics a higher salary during the probationary period. *Id.* The plaintiffs sought retroactive pay, arguing that there was an implied contract for higher compensation during their probationary period in accordance with the new policy. *Id.* The court disagreed, stating that "[c]ases which have addressed employees' claims based on implied contract theories for extra compensation beyond a pre-determined salary are sparse and have held against

the employees." *Id.* at 245 (citing cases). The plaintiffs acknowledged that they were hired as firefighters and would serve a two-year probationary period before their job classification, and correspondingly their salaries, would change. *Id.* at 246. Under these circumstances, the court couldn't find that defendant was unjustly enriched. *Id.*

Similar to *Klekamp*, at the time of their retirement, the plaintiffs knew they were being paid at the 1999-2003 wage rates and that there was no certainty of retroactive wage increases. Before accepting early retirement, the plaintiffs could have discussed retroactive raises with their union, and certainly should have if their decisions to accept early retirement were contingent upon increased pay. After agreeing to participate in the ERIP, it was too late. The plaintiffs were stuck with the wage rates in the 1999-2003 CBAs, unless the union and the City agreed to give them retroactive wage increases in the 2003-2007 CBAs, which they did not. *See Mueller v. City of Highland Park*, 519 N.E.2d 712, 716 (Ill. App. Ct. 1988) (a contract implied in law did not exist concerning water supplied by a city to a village during the period of negotiations between the two municipalities; "[i]f the parties later enter[ ] into a valid contract, there cannot be a recovery on an implied contract"). Nothing required the City to give all employees the same pay increase; the City and the union were free to negotiate as they did. *See* 5 Ill. Comp. Stat. 315/7 (requiring the union and the public employer to bargain in good faith but not compelling either party to agree to proposals or make concessions).

The City has not been unjustly enriched by accepting the plaintiffs' services in exchange for existing wage rates. The plaintiffs were paid for their services, received enhanced pension benefits for taking early retirement, and were not subject to the new cost-saving concessions that apply to active employees who received retroactive raises. They essentially asked the district court to rewrite the 2003-2007 CBAs, which were the subject of two years of negotiation and concessions on both sides, to provide them with additional compensation. This result would be inequitable. During contract negotiations, retroactive pay for employees who retired after July 2003 was discussed and rejected in exchange for more favorable work rules. The City is entitled to the benefit of its bargain.

## B. Due Process Claim

In Count V of their amended complaint, the plaintiffs allege that the City failed to give them important and material information to induce them to take early retirements.[3] They assert that the City concealed or withheld its intention not to give them retroactive pay increases, even though the City knew that plaintiffs participated in

---

[3] The plaintiffs also make passing reference on appeal to a procedural due process claim asserted in Count I of their amended complaint. This argument is completely undeveloped and so is waived. *See Argyrpoulos v. City of Alton*, 539 F.3d 724, 738 (7th Cir. 2008) (holding undeveloped claims are waived).

the ERIP with the expectation of receiving such increases based on the City's past practices. We assume without deciding that the plaintiffs had a property interest in their public employment; the City doesn't contend otherwise.

The plaintiffs cite *Spreen v. Brey*, 961 F.2d 109 (7th Cir. 1992) to support their due process claim. In that case, we held that the plaintiff would be entitled to certain procedural due process rights if the city made material misrepresentations to induce her to resign. *Id.* at 112. *Spreen* doesn't help the plaintiffs because unlike in that case, the plaintiffs haven't brought forth any evidence that the City made misrepresentations to induce them to retire early. The City held meetings to explain the ERIP, which the plaintiffs attended. The plaintiffs voluntarily took part in the ERIP with full knowledge that negotiations for the 2003-2007 CBAs were underway and accordingly, no agreement as to retroactive wage increases had been reached. If any duty was owed to the plaintiffs to inform them about the status of these negotiations, it was owed by their union. *See* 5 Ill. Comp. Stat. 315/6(c) (stating that the union "is the exclusive representative for the employees . . . with respect to rates of pay, wages, hours and other conditions of employment."). As stated above, the City was open about its intentions not to pay raises without cost-saving concessions. Even though the plaintiffs had to choose whether to accept early retirement when raises were uncertain, such a choice doesn't establish coerced resignation. *See Palka v. Shelton*, 623 F.3d 447 (7th Cir. 2010) (finding no coerced resignation even though plaintiff was forced to

choose between resigning to protect his retirement benefits or clearing himself before the Merit Board), *cert. denied*, 131 S. Ct. 1680 (2011). Because their retirement was voluntary, the plaintiffs were not deprived of a protected property interest by state action.

### III.  Conclusion

We AFFIRM in part and REVERSE and REMAND in part with instructions to the district court to enter summary judgment for the City on the plaintiffs' implied contract claim.