| NONPRECEDENTIAL DISPOSITION |
| :---: |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2014
Decided March 10, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 14-1567

| | |
| :--- | :--- |
| WILLIAM A. LEE, SR., | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of |
| | Indiana, Hammond Division. |
|     *v.* | |
| | No. 2:12-CV-25-TLS |
| CITY OF ELKHART, INDIANA, *et al.,* | |
|     *Defendants-Appellees.* | Theresa L. Springmann, |
| | *Judge.* |

**O R D E R**

After the police department in Elkhart, Indiana, had placed patrol officer
William Lee, Sr., on leave while investigating allegations of misconduct, he claimed to
be suffering from post-traumatic stress disorder because of his involvement in two
shootings and applied for leave under the Family and Medical Leave Act of 1993,
29 U.S.C. §§ 2601–2654. The City never acted on that application because it
substantiated the misconduct allegations and fired him. Lee sued the City, its chief of
police, and a civilian doctor, arguing that the City had violated the FMLA, see 29 U.S.C.
§ 2615(a), and that the chief and doctor had conspired to violate his civil rights, see 42

U.S.C. § 1983. The district court granted summary judgment for all of the defendants. We affirm.

**I**

Lee had worked for six years as an Elkhart police officer when in 2011 police chief Dale Pflibsen recommended that he be fired because of a string of disciplinary matters dating to 2007. Lee's troubles began when a female acquaintance complained that he came to her house, while off duty and intoxicated, in the early morning hours and urinated on her fence. In 2009 a worker at a convenience store complained that Lee, on duty at the time, came to the store and "cupped" her buttock with his hand, pressed himself against her from behind, and made unwelcome sexual comments. And in 2010 a manager at a Pizza Hut complained that Lee had come to the restaurant in uniform and grabbed a female employee's breast.

Meanwhile, in 2008 Lee shot a fleeing suspect in the shoulder and, in keeping with the department's policy, was placed on paid administrative leave until a psychiatrist cleared him to return to work three months later. Then in 2009 a suspect shot at Lee; the shot missed Lee but struck another officer, and Lee did not take any leave afterward. After neither shooting was there any mention of PTSD.

After investigating the Pizza Hut incident, the police department suspended Lee for five days in July 2010 and informed him that he faced dismissal if he committed similar misconduct in the future. The department also ordered a psychiatric evaluation to assess his fitness for duty. The examining psychiatrist, Dr. Thomas Mawhinney (the same psychiatrist who examined Lee after the shooting in 2008),told Lee that future incidents could lead to his dismissal, but cleared him to return to work and recommended psychological counseling. Lee asserts in his brief before this court that Dr.  Mawhinney, diagnosed him with PTSD in July 2010. We have been unable to verify that fact, however, even though we have found the docket entry to which he refers. The letter from Dr. Mawhinney does recommend counseling, but it actually states that "the officer … generally denied a number of symptoms of post-traumatic stress disorder." In any event, Lee began counseling with Dr. Richard Hubbard in August, and after three visits Dr. Hubbard opined that Lee was doing well and suggested that his next visit scheduled for November might be his last. Before that fourth visit, however, Lee was put on administrative leave while the police department investigated yet another misconduct complaint. Jackie Cottrell, a civilian who knew Lee, had been arrested in late October 2010 and reported that several months earlier Lee

sent her a text message and then showed up at her house while on duty and in uniform saying there was a warrant for her arrest. She allowed Lee inside her house and the two had consensual sex.

Lee next visited Dr. Hubbard a few weeks after Cottrell made these allegations. Dr. Hubbard's report of that meeting says that Lee was there for an evaluation of "stress related symptoms," which his wife thought indicated PTSD. At first Dr. Hubbard recommended that Lee remain off duty for 7 to 10 days because, the psychologist said, his "stress related symptoms … make it unlikely that he can provide an acceptable standard of safety and judgment in his job." But Dr. Hubbard did not diagnose the source of these symptoms or suggest that a medical or psychological condition was a reason for any of Lee's misconduct. By the end of November 2010, Dr. Hubbard had sent the police department a letter clearing Lee to return to duty without restrictions. Two weeks later, in his final session with Dr. Hubbard, Lee reported experiencing a greater level of "anxiety and tension," and again said that his wife thought he had PTSD. Lee added that he planned to seek treatment elsewhere. Dr. Hubbard responded that Lee's symptoms were not consistent with PTSD but recommended that he remain off duty until he received further testing by a medical doctor.

Lee did not follow that advice. Yet less than two weeks later, while still on paid administrative leave, he began the process of applying for FMLA leave. The FMLA does not require paid leave, see 29 U.S.C. § 2612(c), but the police department goes beyond the statute and provides up to 12 weeks of paid medical leave for employees who qualify. Chief Pflibsen had heard that Lee was considering resigning from the police department, and so in the final days of 2010 he sent an email to Lee asking about his plans. He told Lee that Lee could apply for medical leave under the FMLA if he did not intend to resign. After Lee answered that he wished to apply for FMLA leave, the chief instructed him to pick up a physician's certification form from the police department.

Lee obtained that form during the last week of December and left it at Dr. Hubbard's office. By December 30, though, Chief Pflibsen had decided to recommend that Lee be fired. The chief requested Dr. Hubbard's report from his sessions with Lee, which Dr. Hubbard provided in early January 2011. At the end of that month, Dr. Hubbard completed the FMLA physician's certification. In response to a question on the form asking if Lee was unable to perform any job function, Dr. Hubbard wrote, "Unknown; client was last seen 12-14; no new appointments scheduled." Dr. Hubbard gave this description of Lee's treatment history: "Patient came for help in managing behavior towards women and stress from allegations. Patient felt that he

might have PTSD issues and sought testing or medical evaluation in Elkhart."
Dr. Hubbard checked "no" in answering whether Lee would be "incapacitated for a
single continuous period of time due to his medical condition," but he wrote "possible"
when asked if Lee's "condition [would] cause episodic flare-ups periodically preventing
the employee from performing his job functions." Dr. Hubbard did not clarify what
"condition" he meant. He added that Lee "is no longer under my care" and that he was
"unaware of any developments in terms of symptoms, diagnoses, etc. in the past
5 weeks." Lee collected this certification from Dr. Hubbard's office, and at the end of
January submitted it to the City's human resources department.

Before delivering the completed certification to the HR department, Lee already
had sought out another psychologist, Stephanie Wade, for a second opinion about his
self-diagnosis of PTSD. At their hour-long meeting, Lee informed Dr. Wade of his past
therapy, the accusations against him of inappropriate conduct, and his plan to seek
benefits from the police department based on his belief that he had PTSD. Dr. Wade
administered a personality test and then diagnosed Lee with PTSD, chronic anxiety
disorder, and depressive disorder. But Dr. Wade did not suggest that these conditions
had preceded or contributed to Lee's official misconduct, and Lee never passed along
Dr. Wade's report to either the HR department or anyone else at the City. Neither did
Lee ask Dr. Wade to complete an FMLA certification.

The HR staff never sent Lee's completed certification along to the Board of Public
Safety, which is responsible for personnel matters involving the police department, and
so no action was taken on his FMLA application. Even before Lee had given the FMLA
certification to the HR department, he knew (because Chief Pflibsen had told him so in a
letter dated January 18, 2011) that the police department was seeking his dismissal
because of his conduct involving Cottrell and history of discipline since 2007. After a
two-day hearing in February 2011, the Board of Public Safety fired Lee effective
immediately. The Board considered Lee's multiple instances of past discipline and
determined that he had engaged in immoral conduct unbecoming of an officer. Lee also
had violated department rules when, on the day he went to Cottrell's house, he did not
report his whereabouts while on duty, and when he initiated but failed to complete a
police report after Cottrell attempted to file a report of stolen prescription medication.
Lee had not asked Dr. Wade to testify at the hearing.

Lee, who is black, then sued the City, police chief Pflibsen, and Dr. Hubbard,
raising a number of claims including disability discrimination in violation of the FMLA
and racial discrimination in violation of Title VII. In responding to the defendants'

motions for summary judgment, however, Lee narrowed his suit to the claim that the City had violated the FMLA by denying him medical leave and that Pflibsen and Dr. Hubbard had violated § 1983 by conspiring to delay his diagnosis of PTSD so that he would not be approved for FMLA leave. The district court granted summary judgment for the defendants, reasoning that a jury could not reasonably find for Lee on either claim. The court added that Lee also had failed to submit evidence of harm from the purported FMLA violation. The court pointed out that "[c]onspicuously missing from the Plaintiff's case is any challenge to the actions of the Safety Board to terminate his employment after multiple allegations of sexual misconduct were substantiated."

## II

On appeal, Lee challenges the district court's decision that he could not prevail on his claim that the City interfered with his FMLA request. He argues that he was eligible for leave under the FMLA because PTSD is a serious health condition that involves continuing treatment. Dr. Hubbard's certification, he asserts, was enough to raise a genuine fact issue on his entitlement to leave on this basis.

The FMLA prohibits employers from interfering with, restraining, or denying the exercise of any FMLA rights. 29 U.S.C. § 2615(a)(1); *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011). To prevail on a claim of interference with FMLA rights, an employee must establish that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) the employer denied him benefits to which he was entitled under the FMLA. *Scruggs v. Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012); *Makowski*, 662 F.3d at 825.

Lee cannot prevail on his interference claim because he failed to show that he was entitled to leave under the FMLA in the first instance. Under the FMLA, an eligible employee is entitled to a maximum of 12 weeks of unpaid leave for a "serious health condition" that prevents him from performing his job. 29 U.S.C. § 2612(a)(1)(D). A serious health condition is an illness, impairment, or physical or mental condition involving continuing treatment by a healthcare provider, *id.* § 2611(11), and an employer may require a healthcare provider's certification that the employee is unable to work, *id.* § 2613(a)–(b); 29 C.F.R. § 825.305(a). Lee did not submit any such certification. Dr. Hubbard's statement does not say that Lee suffered from a serious health condition; rather, the doctor certified that, based on counseling sessions which had ended five weeks earlier, he did *not* believe that Lee would require a continuous

absence or be limited to part-time work. The doctor had opined that Lee's "condition"—whatever it might be—possibly could cause "episodic flare-ups periodically preventing the employee from performing his job functions," but PTSD is nowhere mentioned on the form. And although Dr. Wade eventually diagnosed Lee with PTSD, which we accept can be a "serious health condition" qualifying a person for FMLA leave, Lee never asked Dr. Wade to complete an FMLA certification, nor did he inform the police department at his termination hearing that he needed medical leave.

In the end, Lee has simply not supported his allegations with enough to survive summary judgment. In his "statement of issues presented" in this court, Lee implies that his brief will challenge the district court's conclusion that he could not possibly have been harmed by an FMLA violation, even if one existed. But nowhere in Lee's brief is there an *argument* to go along with this asserted "issue," and thus Lee has waived any objection to the district court's conclusion. *Marcatante v. City of Chi.*, 657 F.3d 433, 444 n.3 (7th Cir. 2011); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 852 n.6 (7th Cir. 2002). In any event, had Lee's request for FMLA leave been granted, that leave would not have stopped the City from firing him because of his misconduct. See *Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009). Lee did not dispute the City's evidence that he had repeatedly violated the police department's rules and engaged in inappropriate conduct, he never linked the sexual misconduct to the alleged PTSD, nor did he ever suggest that the Board of Public Safety's vote to discharge him for that misconduct actually was a pretext to keep him from taking FMLA leave. Finally, as the district court observed, Lee was on paid *administrative* leave until the date he was fired, and exchanging that paid leave for paid FMLA leave would have gained him nothing. See *Franzen v. Ellis Corp.*, 543 F.3d 420, 426, 429–30 (7th Cir. 2008); *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 764 (7th Cir. 2008).

Finally, in his "statement of issues presented" Lee implies that he is pursuing his claim that Chief Pflibsen and Dr. Hubbard conspired to interfere with his entitlement to FMLA benefits. The brief again is silent on this point, though, and thus this argument is also waived. See *Marcatante,* 657 F.3d at 444 n.3; *Campania Mgmt. Co.*, 290 F.3d at 852 n.6. Finally, since a jury could not find from Lee's evidence that the City violated the FMLA or that Lee was harmed if it did, Lee's § 1983 conspiracy claim collapses. See *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000); *Thore v. Howe*, 466 F.3d 173, 178–79 (1st Cir. 2006); *Young v. Cnty. of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998).

The judgment of the district court is AFFIRMED.